

No. 3:16-CV-233-CWR-FKB

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

*Plaintiff*,

v.

HALLIBURTON ENERGY SERVICES,
*et al.*

*Defendants*.

ORDER DENYING MOTION FOR SUMMARY JUDGMENT

Before CARLTON W. REEVES, *District Judge*.

In 2013, Jason Anderson filed a discrimination charge against Halliburton with the Equal Employment Opportunity Commission.[1] Anderson alleged that Halliburton violated federal anti-discrimination law and "ruined [his] career" by firing

---

[1] *Charge of Discrimination*; Docket No. 88-4 at Ex. 3.

him because of his age and a knee-related disability.[2] Halliburton responded to the charge using the Commission's alternative dispute resolution program, leading to a mediation conference in February 2014.[3] Halliburton sent its Senior Employee Relations Representative, Rebecca Oliver, while Anderson attended without counsel.[4] The conference led to an Agreement drafted by Oliver and the Commission mediator, and signed by Anderson.[5] The Agreement required Halliburton to pay Anderson $40,000 and, contingent on his passing pre-employment screening, rehire him as an employee with a $100,000-a-year salary and duties comparable to those of Project Specialist Safeguard III.[6] In exchange for "the promises made" to rehire Anderson, the Commission agreed to terminate its investigation of Halliburton over Anderson's charge.[7]

By September 2014, Halliburton had paid Anderson the lump sum,[8] but still had not hired him.[9] Nevertheless, Halliburton "notified the [Commission] that the company had satisfied its

---

[2] *Id.; Statement of Jason Anderson*, Docket No. 88-4 at Ex. 7.

[3] *Mediation Settlement Agreement*, Docket No. 15-1.

[4] *30(b)(6) Deposition Testimony of Rebecca Oliver*, Docket No. 77-3 at 36.

[5] *Mediation Settlement Agreement*, Docket No. 15-1; *30(b)(6) Deposition Testimony of Rebecca Oliver*, Docket No. 77-3 at 52 ("Q. Who drafted the revised mediation agreement? A. I am pretty sure I did. And [the mediator] may have revised hers, as well.").

[6] *Mediation Settlement Agreement*, Docket No. 15-1;

[7] *Id.*

[8] *Deposition Testimony of Jason Anderson,* Docket No. 77-1 at 125-26.

[9] *Responses to Plaintiff's First Set of Interrogatories*, Docket No. 88-3.

obligations under the [Agreement]."[10] In 2016, the Commission filed this suit, alleging that Halliburton's refusal to hire Anderson amounted to breach of contract.[11]

This case is a straightforward one. The Commission said as much in 2016, when it summed up the basis for its suit in just two sentences: "Halliburton promised to rehire [Anderson] into a position subject to a successful employment screening. Despite [Anderson's] compliance with the terms of the settlement agreement, Halliburton has since failed to hire him for any position."[12] Its initial pleadings reflect a similar clarity of purpose.[13] That purpose was clear because the Agreement was clear. Its few, simple terms stated Halliburton's obligations without any uncertainty.

But, somewhere over the last two years, the parties lost the thread. After their odyssey of lengthy depositions, wasted resources, and unnecessary evidentiary disputes, Halliburton has moved for summary judgment.[14] In their briefings, the parties focus on doctors' judgments, overseas medical facilities, the motives of various actors, and other issues which stray away from the core question of this case: did Halliburton breach its uncomplicated duty to rehire Anderson?

---

[10] *Id.*

[11] *Second Amended Complaint*, Docket No. 15.

[12] Equal Employment Opportunity Commission, *EEOC Sues Halliburton For Breach of Mediation Agreement*, EEOC.gov, Apr. 13, 2016.

[13] *See, e.g.*, *Second Amended Complaint*, Docket No. 15 ("The Commission alleges that [Halliburton] breached the Mediation Settlement Agreement . . . by failing and refusing to hire Anderson.").

[14] *Memo in Support of Motion for Summary Judgment*, Docket No. 78 (redacted version available at Docket No. 102).

The Court's duty on this motion is to investigate that question on the evidence before it. These parties are familiar with the standard for summary judgment, which is appropriate when there is no "genuine dispute" of any "material fact."[15]

# I

## Did Halliburton Breach the Agreement?

Yes.

When a contract is "entered into pursuant to authority conferred by federal statute," as the Agreement was, "federal law controls the interpretation of the contract."[16] That law "draws on the core principles of the common law of contracts that are in force in most states."[17] Those principles state that, "[w]hen a contract is expressed in unambiguous language, its terms will be given their plain meaning"[18] – that is, their meaning in an "ordinary and popular sense."[19] "A contract is ambiguous when its terms are subject to more than one reasonable interpretation."[20]

---

[15] Fed.R.Civ.P. 56(a).

[16] *United States v. Seckinger*, 397 U.S. 203, 210 (1970); *see also Excel Willowbrook, L.L.C. v. JP Morgan Chase Bank, Nat. Ass'n*, 758 F.3d 592, 597 n.6 (5th Cir. 2014) ("It is well-established that government contracts are governed by federal common law.").

[17] *Excel Willowbrook*, 758 F.3d at 597 (internal quotation marks omitted).

[18] *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 822 (5th Cir. 2003).

[19] *Transitional Learning Cmty. at Galveston, Inc. v. U.S. Office of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000).

[20] *Feld Motor Sports, Inc. v. Traxxas, L.P.*, 861 F.3d 591, 598 (5th Cir. 2017) (internal quotation marks omitted); *Reliant Energy*, 349 F.3d at 821-22.

In searching the Agreement for ambiguity, the Court will note the language of other federal settlement agreements that include rehiring provisions. In many cases, that language merely requires an employer to rehire a person to "the first available position . . . comparable to the position . . . for which he was previously considered."[21] Under such terms, an employer has "only agreed to hire . . . if and when a certain position opened up."[22]

The rehiring provision here, unlike those in other agreements, makes no reference to vacancies. The provision is as follows:

> [Halliburton] agrees to rehire [Anderson] as a Project-Specialist Safeguard III; BC503-ESG or comparable position based on successful completion of pre-employment screening. [Halliburton] agrees to pay [Anderson] the base salary of $100,000 per year plus additional premium pay based on the country he is assigned to work.[23]

These terms unambiguously required Halliburton to hire Anderson as an employee with a $100,000-a-year salary and duties comparable to those of Project Specialist Safeguard III. The sole qualification on this duty was not the existence of a

---

[21] *Lynch v. Frank*, 848 F. Supp. 1272, 1274 (S.D. Miss. 1994); *see also, e.g., Jones v. PPG Indus., Inc.*, No. 90-3401, 1991 WL 122364 at *1 (6th Cir. 1991); *Air Line Stewards & Stewardesses Assoc., Local 550, TWU, AFL-CIO v. Trans World Airlines, Inc.*, 713 F.2d 319, 321 (7th Cir. 1983); *Smith v. Keystone Shipping Co.*, No. CIV.A. 04-0003, 2005 WL 1458226, at *4 n. 13 (E.D. La. May 26, 2005).

[22] *Jones*, 1991 WL 122364, at *2; *see also Lynch,* 848 F. Supp. at 1276; *Trans World Airlines*, 713 F.2d at 322-23.

[23] *Mediation Settlement Agreement*, Docket No. 15-1.

vacancy fitting the relevant job description, but rather Anderson's successful completion of pre-employment screening. If there was no appropriate vacancy, Halliburton was obliged to create one for Anderson to fill.

Halliburton disagrees with this interpretation of the Agreement. It says the Agreement was merely required it to "offe[r] a position" to Anderson.[24] Federal law says this disagreement alone is "not enough to constitute ambiguity."[25] It is not a reasonable interpretation of the Agreement, as it transforms the word "hire" into the word "offer." Likewise, Halliburton's belief that the Agreement "didn't require us to create a position for [Anderson]" is unreasonable.[26] No vacancy qualifier can be read into the rehiring provision; if the parties intended otherwise, the words "vacancy" or "first available position" would appear in the Agreement.

Contrary to the Commission's argument, the Agreement is unambiguous, and its meaning is therefore a "question of law."[27] The Court therefore need not consider any evidence beyond the "four corners of the contract."[28] As a matter of

---

[24] *30(b)(6) Deposition Testimony of Rebecca Oliver*, Docket No. 77-3 at 37; *30(b)(6) Deposition Testimony of Ellen Bourgeois Graffeo*, Docket No. 77-2 at 64 ("I believe we met the terms of the mediation by offering him a position . . . it didn't require us to create a position for him.").

[25] *Reliant Energy*, 349 F.3d at 822.

[26] *30(b)(6) Deposition Testimony of Ellen Bourgeois Graffeo*, Docket No. 77-2 at 64.

[27] *See Feld Motor Sports*, 861 F.3d at 598 (quotation marks omitted).

[28] *Hodges v. Am. Fid. Assur. Co.*, No. 5:06-CV-65 DCB/JMR, 2008 WL 723994, at *1 (S.D. Miss. Mar. 17, 2008) (quoting *Gatlin v. Sanderson Farms, Inc.*, 953 So. 2d 220, 222 (Miss. 2007)).

law, then, the Agreement required Halliburton to hire Anderson if he passed pre-employment screening.

The remaining question is one of fact: whether Anderson passed Halliburton's pre-employment screening. That screening consisted entirely of a medical clearance process.[29] Anderson began that process shortly after the parties signed the Agreement.[30] According to Halliburton, medical clearance is "based on the country or position that you are going into."[31] The parties dispute whether Anderson obtained medical clearance for a particular position Halliburton offered him in Iraq – an offer that was revoked because of "the severity of Anderson's medical conditions and whether those conditions could be properly cared for in Iraq."[32] However, Halliburton admits that Anderson was medically cleared to "work in a location that had Western-style medicine available for care."[33] Therefore, it is undisputed that Anderson had passed the pre-employment screening for positions in countries with West-

---

[29] *30(b)(6) Deposition Testimony of Ellen LeBlanc*, Docket No. 77-4 at 42 ("Q. So just so I am clear, preemployment screening is the same as [the] medical clearance exam? A. Yes.").

[30] *30(b)(6) Deposition Testimony of Rebecca Oliver*, Docket No. 88-7 at 58-59.

[31] *30(b)(6) Deposition Testimony of Rebecca Oliver*, Docket No. 77-3 at 38-39, 50.

[32] *Memo in Support of Motion for Summary Judgment*, Docket No. 78 at 21.

[33] *30(b)(6) Deposition Testimony of Rebecca Oliver*, Docket No. 77-3 at 116; *see also Deposition Testimony of Dr. Robert Conte*, Docket No. 88-11 at 47 (Halliburton's medical clearance officer stating that Anderson's medical clearance "would have not disqualified him from employment in the United States or even in some international locations like Singapore that has western-style medicine").

ern-style medicine. The Agreement thus obligated Halliburton to hire Anderson as an employee in one of these countries. The company's refusal to do so constitutes breach of contract.

## II

## Is Halliburton Shielded From Liability?

No.

Halliburton hopes to escape liability through an apparent loophole in the Agreement: the absence of a hire-by date in the rehiring provision. Halliburton argues that this absence makes its obligation to hire Anderson one of "indefinite duration," which therefore could be terminated at any time.[34] Halliburton says any breach was, in fact, merely it terminating of the Agreement. If Halliburton is correct, it may avoid liability on a breach of contract claim – though the Commission will regain the right to sue it for discriminating against Anderson.

However, Halliburton had no right to terminate the Agreement. A contract "may be terminated at the will of either party" when it is "indefinite in duration" *and* it "contemplates continuing performance."[35] Contracts that contemplate continuing performance are those that offer constant exchanges,

---

[34] *Reply in Support of Motion for Summary Judgment*, Docket No. 94-1 at 9-10.

[35] *Trient Partners I Ltd. v. Blockbuster Entm't Corp.*, 83 F.3d 704, 708 (5th Cir. 1996) (quoting *Clear Lake City Water Auth. v. Clear Lake Util. Co.*, 549 S.W.2d 385 (Tex.1977)); *see also Certainty*, RESTATEMENT (SECOND) OF CONTRACTS § 33 (1981) ("When the contract calls for successive performances but is indefinite in duration, it is commonly terminable by either party, with or without a requirement of reasonable notice.").

like money-for-electricity or salary-for-employment.[36] Here, the Agreement contemplates a single exchange: Halliburton hiring Anderson to gain the Commission's promise to not sue. True, the Agreement does not specify a timeframe for Halliburton to rehire Anderson. However, "when the parties to a contract agree to the scope of the work [to be] performed, but do not specify the time or duration for performance, [a court] may infer a reasonable time."[37] Regardless of how many weeks or months constituted a reasonable time period for rehiring Anderson, that period has long been eclipsed. The fact remains: Halliburton's refusal to rehire Anderson constitutes breach.

Halliburton says that, even if it breached, two legal doctrines shield it from liability. The first is the doctrine of unclean hands, which "closes the doors of a court . . . to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief."[38] Halliburton says that, by failing to disclose multiple knee surgeries, back problems, significant pain issues, and PTSD on a March 2014 questionnaire submitted during medical clearance, Anderson acted in bad faith.[39]

---

[36] *See King v. Exxon Co., U.S.A.*, 618 F.2d 1111, 1118 (5th Cir. 1980).

[37] *Denbury Onshore, LLC v. Precision Welding, Inc.*, 98 So. 3d 449, 453 (Miss. 2012); *see also Certainty*, RESTATEMENT (SECOND) OF CONTRACTS § 33 (1981) ("Where the contract calls for a single performance . . . the time for performance is a 'reasonable time.'").

[38] *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945).

[39] *Memo in Support of Motion for Summary Judgment*, Docket No. 78 at 33-34.

The evidence does not support Halliburton's position. Anderson's responses on the questionnaire – such as "osteoarthritis in knees and hip," "total knee replacement," "oxycodone 4 a day as needed for pain" – disclosed most of his relevant medical issues.[40] Furthermore, on the same day Anderson filled out the questionnaire, he told a doctor performing a medical clearance physical that he struggled with "several knee surgeries," significant pain, and back problems.[41] If Anderson failed to tell Halliburton about any of his medical conditions, there is no evidence he did so in bad faith. At worst, Anderson's omissions indicate negligence, rather than the "fraud or deceit" that the doctrine of unclean hands prohibits.[42] The doctrine is inapplicable here.

Likewise, the impossibility doctrine Halliburton has invoked offers the company no protection from liability. The doctrine says that a party cannot be held liable for breach if (1) an event makes contractual compliance impossible, (2) the non-occurrence of the event was "a basic assumption when the contract was made," and (3) the event occurred "without that party's fault."[43] Halliburton says this doctrine applies here because "[the absence of] an available Project Specialist Safeguard III

---

[40] *March 14, 2014 Employee Questionnaire*, Docket No. 101-2 at Ex. 8.

[41] *March 14, 2014 Physical Exam Record*, Docket No. 101-2 at Ex. 8.

[42] *Precision Instrument*, 324 U.S. at 814-15.

[43] *Mackie v. Mills*, No. 3:13-CV-2328-N-BK, 2015 WL 5164770, at *4 (N.D. Tex. Sept. 2, 2015) (citing *Discharge by Supervening Impracticability*, RESTATEMENT (SECOND) OF CONTRACTS § 261 (1981); *see also Graham v. Milky Way Barge, Inc.*, 923 F.2d 1100, 1107 (5th Cir. 1991).

or comparable position" was an event that prevented it from hiring Anderson and occurred without its fault.[44]

This argument is misplaced. As discussed above, the existence of vacancies was not a basic assumption of the Agreement. Halliburton was obligated to rehire Anderson regardless of whether it had an open position for him to fill. He could be rehired to a position in any country, so long as he completed the necessary pre-employment screening. There is no dispute that Anderson satisfied this condition. Halliburton does not – and cannot – argue that it lacked the financial or organizational capacity to hire Anderson to a $100,000-a-year position. Nothing prevented Halliburton from fulfilling its duty to hire Anderson, and nothing shields it from liability for its breach of that duty. None of the other chatter in parties' briefs drown out the evidence stating this basic fact.

### III

### Is Summary Judgment Appropriate?

Not yet.

The Court is inclined to grant summary judgment on the issue of liability in favor of the Commission. The Fifth Circuit says "it is well-settled that a district court may grant summary judgment *sua sponte*."[45] However, the losing party must be given "ten days notice to come forward with all of its evidence

---

[44] *Memo in Support of Motion for Summary Judgment*, Docket No. 78 at 32.

[45] *Love v. Nat'l Med. Enterprises*, 230 F.3d 765, 770-71 (5th Cir. 2000) (internal citations and quotation marks omitted).

in opposition to summary judgment."[46] The Court will be prepared to set this date at the upcoming pretrial conference.

In the meantime, the Court will DENY Halliburton's motion for summary judgment. Regardless of whether summary judgment is granted on the issue of liability, the parties have yet to brief the issue of damages and other relief. If the Court grants summary judgment for the Commission, the trial in this case will still occur in July 2018, and will be limited to the issue of damages.

Finally, the Court must address several filing-related motions from the parties. Halliburton's motions to seal its unredacted memorandum of law and for leave to file a reply memorandum that exceeds page limit rules by 14 pages are GRANTED.[47] The Commission's motion to seal three exhibits erroneously filed on the public docket is GRANTED, given that those exhibits consist of Anderson's medical records.[48]

SO ORDERED, this the 12th day of June, 2018.

s/ CARLTON W. REEVES<br>
*United States District Judge*

---

[46] *Id*. This is the case even when the losing party has already submitted evidence on its own summary judgment motion. *See C & W Asset Acquisition LLC v. Knox*, 104 F. App'x 936, 938 (5th Cir. 2004).

[47] Docket No. 94; Docket No. 103.

[48] Docket No. 106.